The question is as to the validity of the grant (315) to the lessor of the plaintiff. It is settled in this State that a grant founded on an entry made where vacant land is subject to appropriation by entry cannot be collaterally impeached for defects in the entry or irregularity in any preliminary proceeding. But a distinction is equally well established, that when the law forbids the entry of the vacant land, in a particular tract or country, a grant for a part of such land is absolutely void; and that may be shown in ejectment. Thus, entries within the Cherokee boundary were forbidden by the acts of 1778 and 1788, and, consequently, the grants were held to be void. Avery v. Strother, 1 N.C.;Strother v. Cathey, 5 N.C. 102. So the confiscated lands were grantable only on sales by the commissioners, certified to the officers of State; and, therefore, an entry and grant thereof was held void in a suit for the land. University v. Sawyer, 3 N.C. 98. In these instances the subjects, if one may so speak, were not within the jurisdiction or capacity of the executive officers, who were held to have transcended their powers in issuing the grants. As the entry laws were never extended to the lands in Cherokee, but, by the acts of 1783, 1819, and 1836, the entry of those lands was forbidden and other modes provided for the *Page 216 
disposition of them by public sales by commissioners, counsel for plaintiff admitted that this grant would be void by the general law, and relied on the resolution of 1848 as the authority for the location in Cherokee and, therefore, as sustaining the grant in this proceeding. The resolution is considered to have created an exception from the general law in favor of this claim. Such an exception is an unusual thing, and not readily to be expected, and therefore it ought to appear very clearly, by unequivocal and express language, or strong inference. If it was intended to create this single exception, it is singular that the Cherokee lands should not have been expressly mentioned in the resolution. But they were not; and it is only from general terms and by implication the attempt is made to include them — an implication which, at the (316) best, is uncertain and unsatisfactory. It is clear they are excluded by the terms of the first clause of the resolution, which expressly provides the location, "on any of the lands of this State now subject to entry by law," and shows the actual intention to affirm the general law respecting these lands almost as clearly as if it had been said in so many words that it should not cover any part of the Cherokee territory. Against such explicit terms in the resolution it is requisite the subsequent language should be very strong and positive. It is said, however, that the second branch of the resolution is sufficient to open to this claim all the land of the State, including that in Cherokee, because it allows the location "to include any lands now belonging to the State for which the State is not bound for title," with a proviso that it shall not extend to the swamp lands. It is obvious that the construction contended for makes the two clauses of the resolution directly contradictory. That is never admissible, if it can be avoided, but it is our duty, if possible, to reconcile the different parts with each other, which may be done in this instance by construing the latter clause in reference to the first to mean"any such lands"; that is, lands to which the entry laws had been extended, wheresoever situated, which the State was not already bound to convey. That would allow some operation to both parts of the resolution, while the other view makes one part of the resolution repeal another, though the passage of both is but one act. It was, however, further contended that the construction claimed for the plaintiff is fortified by the proviso excluding the swamp lands from the operation of the resolution, since it implies that the swamp lands were considered to be within the terms of donation, and hence it became necessary to exclude them expressly; and if they were within those terms, so also must the Cherokee lands be. The argument is a fair one when the thing excepted (317) by a proviso might reasonably be supposed to be within the words of the enacting part of the legislative act; and it may have much force when the enactments are in themselves dubious. But it cannot *Page 217 
avail much, if anything, when it is certain that the enactment would not of itself have embraced the thing excepted, and it is thence apparent that the proviso was superfluous and inefficient. In such a case the proviso may perplex, but it cannot elucidate. It is obvious, upon reading this resolution, that, like most private matters in the Legislature, this was not well understood by the draftsman, nor much considered by the members at large. The state of the law respecting the swamp lands was not duly looked into, for, if it had been, it would have been seen that by the act of 1836 the whole of the swamp lands has been vested in the President and Directors of the Literary Fund, with the power and duty to drain, sell, and convey them for the best price that could be had, as a part of a trust fund for the establishment of common schools; and, therefore, that those lands did not belong to the State in the sense of being hers without any obligation on her for the title. The proviso, then, seems to serve but little purpose in arriving at the true sense of the resolution, and leaves it to the considerations already adduced. There are, however, others which tend to raise an implication against the interpretation urged for the plaintiff. By the general law vacant lands are to be entered with the entry-taker of the county where they lie, and a warrant is to be issued by him to the county surveyor, and he is to make a survey and plat and return them to the Secretary of State within a prescribed period. Those are sworn and responsible officers, and are required thus to act as the means of preventing frauds on the State by truly ascertaining the land which ought to be granted. It should not be supposed that the Legislature meant to dispense with those safeguards against imposition, or that in this instance the land to be granted (318) should not be identified by sworn officers on the spot for the guidance of the officers at the seat of government. Yet that would be so if the resolution extended to land in Cherokee, for, as the entry laws never extended to that county, there could be neither an entry-taker nor surveyor qualified to discharge the duties belonging to those officers in other counties. The grant does not specify by what authority the person who made the survey did so; and it was not easy to conjecture upon what the Secretary proceeded in granting the particular land. Upon inquiry at the office, the information was obtained that an entry was made with the clerk of the county court, and a warrant issued by him to a surveyor who made the plat, and then a certificate given by the State's agent for Cherokee bonds that the State was not bound for title for any part of the land included in the survey — a point in which it seems that gentleman was mistaken. But the provision in the statute for the clerk's acting as entry-taker certainly would not create for him the office of entry-taker pro hoc vice
merely, as the act has plainly within its purview a vacancy in a preexisting office of entry-taker and intended merely to provide for *Page 218 
entries made with him until the vacancy should be filled, which is directed by the act to be done at the next term of the county court after the vacancy. Now, although the first part of the resolution merely authorizes the Secretary of State to issue a grant to Ailsey Medlin, and is silent as to the mode of selecting and certifying the particular tract, yet it seems certain that it was intended those facts should appear in the usual modes of entry, warrant, and survey; for the second branch of the resolution clearly denotes that by saying "that the warrant or warrants may be laid," etc. That could not be in Cherokee, and thus evinces that probably the grant was not intended to be for land in Cherokee.
(319) If, however, that should not be the correct construction of the resolution — and it is perhaps proper to say that, framed as it is, one cannot be certain of it — yet the Court is agreed that the land claimed by the defendants was not the subject of grant under the resolution, and that the grant must be held to be null in this action. The reason why grants for land, taken up as vacant within the counties to which the entry laws extend, cannot be impeached collaterally is that there is a general authority in the public officers to issue such grants, and they are, therefore, to be taken as having been rightly issued, unless that matter be directly put in issue in a proceeding to impeach them. But it has already been mentioned that it is otherwise in respect to land over which the entry laws do not extend, or in respect to which, though belonging to the State and within an entry county, some other particular mode of disposition is provided, because in these cases there is either total want of power or an excess of it in regard to the subject matter. The present seems to the Court to fall within the latter class of cases, even if it be admitted that land in Cherokee might have been taken under the resolution; for, supposing that the resolution had expressly said that the claim might be located on any land in Cherokee for which the State was not bound for title, it could not have been construed as a provision in a general statute would be which opened all vacant lands in Cherokee to entry by any citizen. On the contrary, it must be regarded as making a special gift of particular land, or of land in a specified condition, and construed as exceptions from general rules usually are, that is, strictly, or at all events fairly, towards the State and previous claimants under her. It is known that the lands in Cherokee are in various states. Much, not fit for cultivation, was not surveyed for sale. Some, which was surveyed, was put up at the sales, but not sold for want of bidders. Much was sold, and of that some has been surrendered by the purchasers, or their sureties, and accepted by the State; and some, (320) including that now in controversy, is still held and claimed under the purchasers. It could not have been the purpose of the Legislature to give to this person land which she had before sold to another of *Page 219 
her citizens for a high price, paid or secured. The bounty, then, must not be taken to be of so much Cherokee land generally, but to be made in very special terms, confining the right to such portions of those lands, if included at all, as the State was not previously bound by her contract and her honor to convey to any other person; and, therefore, it is incumbent on the donee to show that his grant is for land within the particular description, or, at all events, it is fatal to it when it appears that the land is not of that particular description, but had been purchased, and that the State was justly bound to the purchaser for it.
PER CURIAM. Judgment affirmed.
Cited: Lovingood v. Burgess, 44 N.C. 408; Barwick v. Wood, 48 N.C. 312;Stanmire v. Taylor, ibid, 210; Harshaw v. Taylor, ibid, 514; Barnettv. Woods, 58 N.C. 428; Dugger v. McKesson, 100 N.C. 11; Gilchrist v.Middleton, 107 N.C. 679; McNamee v. Alexander, 109 N.C. 246; Lowe v.Harriss, 112 N.C. 480, 485; Wyman v. Taylor, 124 N.C. 428; Dosh v.Lumber Co., 128 N.C. 86; Holly v. Smith, 130 N.C. 86; Janney v.Blackwell, 138 N.C. 439; Board of Education v. Makely, 139 N.C. 37;Anderson v. Meadows, 159 N.C. 408; Westfelt v. Adams, ibid, 419, 421;Waldo v. Wilson, 173 N.C. 691.